# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ERIC L. ROBINSON,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,

Defendants.

Case No. 16-cv-6185

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric L. Robinson ("Mr. Robinson") filed a civil action under 42 U.S.C. § 1983 against Defendants Wexford Health Services, Inc. ("Wexford") and the Illinois Department of Corrections ("IDOC"), alleging deliberate indifference to medial needs. On February 21, 2018, the district court granted Mr. Robinson's motion to voluntarily dismiss IDOC, leaving only Wexford as a defendant. (Dkt. 96). Before the Court is Wexford's motion for summary judgement. For the reasons set forth below, Wexford's Motion for Summary Judgment [116] is granted.

## I. Background

On December 10, 2015, Mr. Robinson, a diabetic, arrived at Stateville Northern Reception and Classification Center ("Stateville NRC") after being transferred from Peoria County Jail ("Peoria"). (Dkt. 122, ¶4). While at Peoria, Mr. Robinson had a history of refusing insulin from medical staff. (*Id.* ¶¶35–45). The Peoria medical staff summarized this information in a transfer form and provided it to the Stateville NRC medical staff. (*Id.* ¶46).

Upon arrival to Stateville NRC, Mr. Robinson received an examination from Wexford employee Diane Schwarz, a physician's assistant. (Dkt. 122, ¶49). Wexford provides medical services to IDOC prisons pursuant to its contract with the State of Illinois. (*Id.* ¶5). Although Mr. Robinson took insulin and Metformin, another diabetes medication, at Peoria, PA Schwarz reduced his Metformin prescription by half and did not give him insulin. (*Id.* ¶¶53–54). PA Schwarz's reasons for changing Mr. Robinson's prescription–and the validity of those reasons–are disputed by the parties.

On January 1, 2016, Mr. Robinson entered Stateville NRC's infirmary and Dr. Roz, a Wexford employee, prescribed various insulins and procedures to monitor Mr. Robinson's diabetes. (Dkt. 128, ¶39). Mr. Robinson claims, and Wexford disputes, that he submitted "at least 10 sick calls to IDOC correctional officers" and "at least 6 sick calls to Wexford employees" in the 21 days leading up to his infirmary visit. (*Id.* ¶¶8–10). The parties dispute the procedure for handling these sick call requests and whether they were received. Mr. Robinson further claims–and Wexford disputes–that he experienced increasingly worsening symptoms prior to his infirmary visit including swelling of the extremities, blurred vision, dizziness, pain in his hands and feet, intermittent seizures, loss of consciousness, loss of bladder control and temporary blindness. (*Id.* ¶¶36, 37). Mr. Robinson claims that he experienced some immediate relief after receiving insulin on January 1, 2016 but continued to suffer severe pain in his hands and feet. (*Id.*). Mr. Robinson alleges

that Wexford, through its *de facto* policies and practices, caused him to suffer and showed deliberate indifference to his medical needs. (Dkt. 77, ¶¶79–86).

## II.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment warranted where a reasonable juror could not find in favor of the non-moving party "on the evidence submitted in support of and opposition to the motion for summary judgment.") (internal citation omitted). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of

material fact for trial." *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 568 (7thCir. 2017) (citations and quotation marks omitted).

## III. Discussion

Mr. Robinson's § 1983 claim against Wexford, a private corporation that provides medical services for Stateville, must be evaluated under *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* claims apply equally to municipalities and to "§ 1983 claims brought against private companies [such as Wexford] that act under color of state law." *Whiting*, 839 F.3d at 664 (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782).

Liability under *Monell* may be established in three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic,* 916 F.3d 611, 617 (7th Cir.), *cert. denied*, 140 S. Ct. 51 (2019) (quoting *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). To prevail under *Monell*, Mr. Robinson must provide evidence that would allow a reasonable jury to conclude that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796; *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The policy, custom or practice "must be the direct cause or

moving force behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Circ. 2004).

Mr. Robinson fails to provide competent evidence of an unconstitutional policy or widespread practice sufficient to survive summary judgment. Mr. Robinson does not claim that Wexford has an explicit unconstitutional policy; rather, a "*de facto* policy to withhold medication and to not perform medical[ly] prescribed medical treatment as a cost cutting and efficiency measure." (Dkt. 77, ¶79). A *de facto* policy claim falls under the "widespread practice" theory of liability. *See e.g. LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 981 (N.D. Ill. 2017) (noting that one theory of liability under *Monell* is "a widespread common practice that by virtue of its ubiquity constitutes a *de facto* custom or usage with the force of law"). To establish a "widespread practice," Plaintiff must offer "evidence that there is a true municipal policy at issue, not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("a mere isolated event" is insufficient to prove widespread practice). The Seventh Circuit has noted that "the gravamen" of a *Monell* claim "is not individual misconduct" on the part of certain employees, "but a *widespread practice* that permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (emphasis in original). When relying on indirect proof to show widespread practice, as Mr. Robinson does here, a "plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of

policymakers was apparent and amounted to a policy decision." *Dixon v. City. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (internal quotations omitted).

The only evidence Mr. Robinson provides of a widespread practice is: (1) his own testimony that he made 16 sick call requests, at least 6 delivered directly to Wexford employees, over a 21 day period prior to his infirmary visit that went unanswered; (2) Dr. Fisher's testimony that the average vial of insulin costs about $78.00 while a dose of Metformin costs "pennies"; and (3) testimony by Dr. Fisher admitting that Wexford was concerned about the sick call process, yet Wexford "chose to adhere to its client's wishes, and do nothing." (Dkt. 123 at 10–12; Dkt. 128, ¶¶ 3, 9–10, 12, 27). This evidence, taken in the light most favorable to Mr. Robinson, is insufficient to demonstrate a widespread practice of ignoring inmates' requests for treatment and failing to provide insulin as a cost cutting measure.

First, "[t]o prove an official policy, custom, or practice within the meaning of *Monell*, [Mr. Robinson] must show more than the deficiencies specific to his own experience." *Daniel*, 833 F.3d at 734 (citations omitted). He must demonstrate "systemic and gross deficiencies in staffing, facilities, equipment, or procedures" in a detention center's medical care system. *Dixon*, 819 F.3d at 348 (quotation mark omitted). Mr. Robinson only provides evidence from his own experience over a 21-day period where he put in 16 sick call requests and pressed the emergency button in his cell on numerous occasions, all of which went unanswered. He argues that this is sufficient to demonstrate that "Wexford ***repeatedly*** ignored Mr. Robinson's pleas for medical attention which, critically, shows a widespread practice and

custom of ignoring inmates 'serious medical needs.'" (Dkt. 123 at 1). (emphasis in original). The Court disagrees. This provides evidence of a single inmate's experience, not a widespread practice. *See Johnson v. Hart*, No. 10-cv-240, 2011 WL 1706117, at *6 (N.D. Ill. May 5, 2011) ("A policy or practice claim requires more evidence than a single incident to establish liability. A custom or policy cannot be attributed to the County on the basis of one inmate's dissatisfaction with the quality of his medical care actually received.") (internal quotations and citations omitted). While relying on his own experience may be enough at the pleading stage to plausibly state a claim, *White*, 829 F.3d at 844, it is not enough at the summary judgment stage. *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006) (noting that to survive summary judgment, a plaintiff must present "competent evidence tending to show a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event).").

Mr. Robinson argues that Wexford's "pattern of ignoring requests for (or at minimum delaying) medical treatment tends to show an unlawful widespread custom and practice that caused Robinson serious pain and increased risk of further complications." (Dkt. 123 at 11). In support he cites to *Crawford*, where the district court denied summary judgment, finding sufficient evidence to demonstrate that a reasonable jury could find Wexford liable under *Monell* where "long wait times between requests for medical attention and treatment create an obvious risk of prolonging painful medical conditions." *Crawford v. Davis-Huntley*, No. 14 C 06211, 2018 WL 3630023, at *8 (N.D. Ill. July 31, 2018). But in *Crawford*, beyond the

plaintiff's personal experience, the plaintiff produced evidence "demonstrating a substantial backlog of inmates waiting for MD sick call during the time that he was waiting for medical attention," and evidence that "over 200 inmates had to wait three or more days to be seen at MD sick call." *Crawford*, 2018 WL 3630023, at *8. Mr. Robinson presents no such evidence here.

Second, Mr. Robinson's reliance on Dr. Fisher's testimony that "the average vial of insulin costs about $78.00 while a dose of Metformin costs 'pennies'" also falls short. Mr. Robinson states that through this testimony, "a reasonable juror could find that cost savings played ***some*** role in Wexford's practice of ignoring inmate's medical requests." (Dkt. 123 at 12) (emphasis in original). Yet, Dr. Fisher's general statement noting the price difference between Metformin and insulin, without more, is insufficient to demonstrate a widespread cost cutting practice. *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006) (noting that a single statement offering a general conclusion that was not specifically targeted to the plaintiff's claims "amount[ed] to little more than a bald and conclusory statement.") (internal quotation omitted).

Mr. Robinson needs to present some "actual evidence" to back up this assertion. *Barrow v. Wexford Health Sources, Inc.,* No. 3:14-CV-800-NJR-DGW, 2017 WL 784562, at *11 (S.D. Ill. Mar. 1, 2017), *motion to certify appeal denied,* No. 314CV00800NJRDGW, 2017 WL 1301182 (S.D. Ill. Apr. 7, 2017), and *appeal dismissed,* No. 17-1574, 2017 WL 4124947 (7th Cir. Sept. 1, 2017) ("While the Court has no doubt that Wexford, a corporation, is interested in reducing costs and increasing profits, Barrow has not connected his theory with any actual evidence that

Wexford instituted a policy of placing profits over the health and wellbeing of its patients."). As previously indicated, Mr. Robinson provides no evidence of any other incidents among other inmates to show "systemic and gross deficiencies" in Wexford's provision of medical treatment due to cost-cutting measures. He merely speculates that "Wexford saved a significant sum of money [with Plaintiff and] *likely* others." (*Id.* at 8) (emphasis in the original). This is not enough. *Palmer v. Marion Cty.,* 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference."); *Montague v. Wexford Health Sources, Inc.*, 615 Fed.Appx. 378, 379 (7th Cir. 2015) (affirming summary judgment against plaintiff on *Monell* claim where plaintiff "relied on his own opinion and that of some other inmates," which were "not personal knowledge of Wexford's practices . . . [s]o it does not count as evidence"). Mr. Robinson also does not dispute the "substance" of Wexford's evidence that during the relevant time period in December 2015, Wexford had seventy inmates on both formulary and non-formulary brand insulins at Stateville NRC. (Dkt. 122, ¶33). He presents nothing to contradict this evidence nor does he present any evidence showing a widespread practice of refusing to prescribe insulin for cost-cutting reasons.

Third, Mr. Robinson's reliance on Dr. Fisher's testimony to show that "Wexford's policy makers were aware of the systemic issues with the sick call process," (Dkt. 123 at 11), also falls short. Dr. Fisher testified that Wexford raised

concerns with IDOC that sick call forms were not retained in the inmate's medical record; but IDOC chose to not change its procedure. (Dkt. 125 at 25–26). Mr. Robinson argues that this testimony "demonstrates that Wexford *likely* knew of its failure to respond adequately to sick calls." (Dkt. 123 at 11) (emphasis added). Yet, testimony that Wexford was aware that IDOC did not retain sick call forms in the inmates' medical chart does not equate to evidence of a widespread practice of failing to *respond* to sick call requests. Mr. Robinson must "connect [ ] his theory with . . . actual evidence that Wexford instituted a policy of placing profits over the health and wellbeing of its patients." *Barrow*, 2017 WL 784562, at *11; *see also Rossi*, 790 F.3d at 737 (affirming the district court's decision that a police lieutenant's general deposition testimony, which did not address quantity or frequency of the alleged widespread practice, "served more as a passing comment than evidence demonstrating a widespread practice.").

Further, Mr. Robinson cites to *Ford*, where summary judgment was denied on a *Monell* claim where "plaintiff's severe pain was unnecessary and potentially unconstitutionally caused by the sick call backlog." (Dkt. 123 at 11). Yet in *Ford*, the plaintiff presented evidence to support an inference that Wexford had a practice of allowing sick call backlogs, including testimony from a medical technician and Wexford's corporate designee confirming the existence of sick call backlogs and internal audits emphasizing shortcomings with the sick call procedures including sick call backlogs. *Ford v. Ghosh*, No. 12 CV 4558, 2014 WL 4413871, at *10 (N.D. Ill.

Sept. 8, 2014). Mr. Robinson does not present similar evidence of a widespread practice of failing to respond to sick call requests.

The Court finds that even when taken in the light most favorable to Mr. Robinson, a reasonable juror cannot infer from the evidence submitted that Wexford had a widespread practice of deliberate indifference to medical needs by failing to respond to sick calls and failing to provide insulin to inmates.[1] Accordingly, summary judgment is granted in Wexford's favor.

## CONCLUSION

For the reasons stated, Wexford's Motion for Summary Judgment [116] is granted.

E N T E R:

Dated: December 30, 2019

_____
MARY M. ROWLAND
United States District Judge

---

[1] In light of this finding, the Court need not determine whether there are genuine issues of material fact as to whether Mr. Robinson suffered from an objectively serious medical condition or whether Wexford was deliberately indifferent to his serious medical need. Similarly, Mr. Robinson argues that Wexford violated Local Rule 56.1 by improperly relying on: (1) PA Schwarz's out of court hearsay statements to Dr. Fisher; and (2) Dr. Fisher's Rule 30(b)(6) testimony that PA Schwarz's treatment decisions were appropriate. As the Court did not rely on this testimony in reaching its conclusions, the Court need not make a ruling on this issue.